UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DISHANT GUPTA,<br><br>Defendant | Criminal No. 24cr10279<br><br>Violation:<br><br><u>Count One:</u><br>Securities Fraud<br>(15 U.S.C. §§ 78j(b) and 78ff(a); 17 C.F.R. § 240.10b-5)<br><br><u>Forfeiture:</u><br>(18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)) |

INFORMATION

At all times relevant to this Information:

General Allegations

1. The defendant, DISHANT GUPTA ("GUPTA"), resided in Hillsborough, New Jersey.

2. Between in or about September 2019 and in or about October 2021, GUPTA was employed as a business insight lead by Company A, a global pharmaceutical company headquartered in France that had an office in Cambridge, Massachusetts. In or about November 2021, GUPTA was promoted to Director of Strategy and Operations.

3. Company B was a biopharmaceutical company based in Cambridge, Massachusetts that was involved in the development of cancer-treating drugs. Company B was an issuer of securities registered under Section 12 of the Securities Exchange Act of 1934 (the "Exchange Act") and was required to file reports under Section 13 of the Exchange Act. Shares of Company

B were publicly traded on the NASDAQ Stock Market ("NASDAQ"), a national securities exchange.

4.      Individual-1 worked at Company A as the Senior Vice President of its Oncology Business Unit.

5.      Individual-2 was employed at Company A as its Vice President and Head of US Oncology Strategy.

6.      Individual-3 was employed at Company A as its Vice President for Strategy, Business Development and Alliance, Consumer Health Care.

<u>The Insider Trading Scheme</u>

7.      In the course of his employment at Company A, GUPTA obtained material non-public information ("MNPI") about the fact that Company A was negotiating to acquire certain assets of Company B, including its leading cancer drug, and that Company A later agreed to acquire Company B outright.  While in possession of this MNPI—and in violation of the fiduciary duties and duties of trust and confidence that GUPTA owed to Company A as his employer—GUPTA acquired shares of Company B in his own and his wife's brokerage accounts, in an effort to profit from the eventual public announcement of the transaction.  GUPTA sold all the shares he had acquired after Company A announced the acquisition of Company B on or about June 27, 2022.

8.       On or about March 25, 2022, GUPTA met with Individual-1 at Company A's Cambridge office.  During the meeting, Individual-1 asked GUPTA to assist him in putting together materials related to Company A's possible acquisition of a cancer drug and related assets of an unidentified biopharmaceutical company.

9.      Later that same day, GUPTA sent an email to Individual-1 and Individual-2 attaching a slide deck that, among other things, contemplated Company A's possible acquisition. In the email, GUPTA wrote: "Thanks for bringing me into the loop on this topic."

10.     On or about March 31, 2022, GUPTA met in Cambridge, Massachusetts, with other Company A executives—including Individual-1, Individual-2, and Individual-3—to discuss possible acquisitions in the oncology market.

11.     By no later than on or about April 7, 2022, GUPTA knew that the cancer drug and related assets Company A sought to acquire belonged to Company B. That same day, GUPTA purchased 500 shares of Company B for approximately $490 in his wife's brokerage account.

12.     On or about April 14, 2022, representatives of Company A and Company B discussed the possibility that Company A would purchase Company B outright. Company A indicated that it would submit an offer in the coming weeks. That same day, GUPTA purchased 3,000 shares of Company B for approximately $2,300 in his wife's brokerage account.

13.     On or about April 22, 2022, representatives of Company A and Company B met at Company A's Cambridge offices to discuss the potential deal. That same day, GUPTA purchased an additional 1,000 shares of Company B for approximately $680 in his wife's brokerage account.

14.     On or about April 25 and April 26, 2022, GUPTA searched for "[Company B] Buyout" on Google. Thereafter, GUPTA conducted almost daily Google searches for "[Company B] stock" until June 27, 2022, the day the acquisition was announced.

15.     Beginning on or around May 2, 2022, GUPTA began to purchase shares of Company B in his own brokerage accounts, while continuing to purchase Company B shares in his wife's brokerage account. For example, on or about May 2, 2022, GUPTA purchased 12,000

shares of Company B in one of his brokerage accounts, and 2,500 shares in his wife's brokerage account. Two days later, GUPTA purchased an additional 12,000 shares of Company B in one of his brokerage accounts and 2,500 shares in his wife's brokerage account. On or about May 11, 2022, GUPTA purchased 803 shares of Company B in one of his brokerage accounts, and 10,000 shares of Company B in his wife's brokerage account.

16. On or about May 16, 2022, Company A submitted a non-binding indication of interest to acquire Company B for $1.10 per share in cash, subject to being granted exclusive negotiating rights through June 17, 2022.

17. On or about May 27, 2022, GUPTA searched "[Company B] takeover" on Google. That same day, he purchased 6,000 shares of Company B in one of his brokerage accounts for roughly $2,700.

18. On or about June 1, 2022, GUPTA purchased 9,500 shares of Company B for more than $4,300 in one of his brokerage accounts and 5,000 shares of Company B for $2,150 in his wife's brokerage account.

19. On or about June 7, 2022, Company A submitted a final non-binding indication of interest to acquire Company B for $1.35 a share. That same day, GUPTA purchased 7,197 shares of Company B for roughly $4,300 in one of his brokerage accounts, and 3,840 shares of Company B for roughly $2,300 in his wife's brokerage account. The next day, he purchased another 10,000 shares of Company B in his wife's brokerage account.

20. On or about June 10, 2022, Company A and Company B entered into an agreement providing that for a certain period of time, Company B would not negotiate with potential acquirers other than Company A.

21.     On or about June 17, 2022, GUPTA transferred $15,000 from his bank account to one of his brokerage accounts, and then purchased 34,000 shares of Company B for roughly $24,800.  He purchased an additional 40,933 shares of Company B for roughly $29,700 in another of his brokerage accounts, and an additional 31,000 shares of Company B for roughly $22,800 in his wife's brokerage account.  In total, GUPTA purchased 105,933 shares of Company B on that single day.

22.     That same day, GUPTA searched "[Company A] takeover" and "[Company A] acquired" on Google.

23.     On or about June 18, 2022—nine days before the public announcement of Company A's acquisition of Company B—GUPTA searched "[Company A] acquired [Company B]" on Google.

24.     On or about June 23, 2022, Company A and Company B agreed on a final purchase price of $1.45 in cash per share of Company B stock.  That same day, GUPTA transferred $10,000 from his bank account to one of his brokerage accounts, and purchased 2,500 shares of Company B stock for roughly $2,100.

25.     On or about the following day, June 24, 2022, GUPTA purchased an additional 48,854 shares of Company B for roughly $46,300.

26.     In total, between on or about April 7, 2022 and on or about June 24, 2022, GUPTA purchased more than 200,000 shares of Company B in his own brokerage accounts, and more than 100,000 shares of Company B in his wife's brokerage account.  All of GUPTA's purchases of Company B securities were made while in possession of MNPI obtained in the course of his employment that Company A was negotiating first, to acquire certain assets of Company B,

including its leading cancer drug, and later, to acquire Company B outright, and in violation of the fiduciary duties and duties of trust and confidence that GUPTA owed to Company A.

27. On or about June 27, 2022, prior to the start of trading, the Company A announced that it had entered into a definitive agreement to acquire Company B for approximately $247 million. Under the terms of the agreement, Company B shareholders would receive $1.45 per share in cash. The purchase price represented a premium of approximately 144 percent over Company B's average closing price on the NASDAQ during the thirty trading days preceding announcement of the transaction.

28. That same day, GUPTA sold all his Company B stock across his own brokerage accounts and his wife's brokerage account, for a total profit of more than $262,000.

COUNT ONE
Securities Fraud
(15 U.S.C. §§ 78j(b) and 78ff(a); 17 C.F.R. § 240.10b-5)

The United States Attorney charges:

29. The United States Attorney re-alleges and incorporates by reference paragraphs 1 through 28 of this Information.

30. Between on or about April 7, 2022 and on or about June 24, 2022, in the District of Massachusetts and elsewhere, the defendant,

DISHANT GUPTA,

did knowingly and willfully, by the use of means and instrumentalities of interstate commerce, the mails, and the facilities of national securities exchanges, directly and indirectly use and employ manipulative and deceptive devices and contrivances in connection with the purchase and sale of securities in contravention of Rule 10b-5 of the Rules and Regulations promulgated by the United States Securities and Exchange Commission, and did (a) employ a device, scheme and artifice to defraud, (b) make untrue statements of material facts and omit to state material facts necessary in order to make the statements made, in light of circumstances under which they were made, not misleading, and (c) engage in acts, practices and a courses of business which would and did operate as a fraud and deceit in connection with the purchase and sales of shares of Company B specifically, by willfully engaging in a scheme to misappropriate material non-public information about Company B, and while in possession of that information, to profit by buying and selling shares of Company B.

All in violation of Title 15, United States Code, Sections 78j(b) and 78ff(a); Title 17, Code of Federal Regulations, Section 240.10b-5.

FORFEITURE ALLEGATION
(18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c))

The United States Attorney further alleges:

31. Upon conviction of the offense charged in Count One in violation of Title 15, United States Code, Sections 78j(b) and 78ff(a); Title 17, Code of Federal Regulations, Section 240.10b-5, the defendant,

DISHANT GUPTA,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense.

32. If any of the property described in Paragraph 31, above, as being forfeitable pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), as a result of any act or omission of the defendant --

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property described in Paragraph 31 above.

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

                                                           JOSHUA S. LEVY
                                                           Acting United States Attorney

By:    */s/ Benjamin A. Saltzman*
        Benjamin A. Saltzman
        Assistant U.S. Attorneys

Date: September 9, 2024